**Lynn Fischer MAYA**

v.

**COUNTY OF ERIE TAX CLAIM BUREAU**

v.

**Fizel Enterprises, Inc.**

**Appeal of: County of Erie Tax Claim Bureau.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 2012.
Decided Jan. 10, 2013.

George Joseph, Erie, for appellant.

David E. Holland, Erie, for appellee Fizel Enterprises, Inc.

Norman A. Stark, Erie, for appellee Lynn Fischer Maya.

BEFORE: LEAVITT, Judge, and BROBSON, Judge (P.), and FRIEDMAN, Senior Judge.

OPINION BY Judge LEAVITT.

The County of Erie Tax Claim Bureau (Tax Claim Bureau) appeals an order of the Court of Common Pleas of Erie County (trial court) granting the petition of Lynn Fischer Maya to set aside a tax sale of property she owned. The Tax Claim Bureau contends that the trial court erred because it gave Maya all the notice of the sale of her property to which she was entitled. Concluding that the Tax Claim Bureau did not make a reasonable effort to give Maya notice of the impending sale after its certified mailing to Maya was returned as unclaimed, we affirm the trial court.

On September 27, 2010, Maya's property at 4723 West Lake Road in Erie, was sold to Fizel Enterprises, Inc. for $7,211.12, which covered outstanding real estate taxes owed for the years 2007 and 2008. The

2009 taxes were paid. On September 30, 2010, Maya was notified of the sale and filed a petition to set aside the upset tax sale. Fizel intervened, and the trial court conducted a hearing on Maya's petition.

At the hearing, Maya testified that she resides in Painesville, Ohio, and that she had listed her Painesville address for the Tax Claim Bureau's mailings with respect to the property sold at the tax sale. Maya explained that she purchased the subject property, a motel, for approximately $127,000 in 1996. Several years later, she closed the business but decided to hold on to the property as an investment; in the meantime it remained vacant and unused. On occasion, she heard from Millcreek Township about the property's maintenance. For example, the Township complained about overgrown grass, and she responded by engaging the services of a lawn cutting contractor. Maya explained that she pays her tax bills at the end of the year. She paid the 2007 taxes on the motel property in full except for an interest penalty in the amount of $112 because she did not know about the penalty. She simply overlooked the 2008 tax bill of $4,528.72, noting that she had paid her 2009 taxes in full.

Maya testified that she had not received any notice that the property was listed for a tax sale. She explained that her mail is not delivered to her house but, rather, to a mailbox, which is one of a bank of mailboxes approximately a quarter-mile from her home. She stated that sometimes the mail is placed in the wrong box and that the mailboxes have been the target of vandalism. Certified letters and packages are occasionally delivered to her door, but she is not at home during regular delivery hours. She learned that the motel proper-

ty had been sold only because her husband happened to be home when the mailman arrived with the Tax Claim Bureau's notice of the sale.

Maya testified that she owns two other properties in the City of Erie with other family members. The assessment records identify her as an owner of those other properties, and it lists her sister's residence in Erie as the address where Maya should receive the tax notices on these properties. Had the Tax Claim Bureau sent a notice to her at her sister's residence regarding the impending sale of the motel property, it would have been received.

The Tax Claim Bureau offered evidence that it sent a notice of the upset sale to Maya's address in Ohio, which is the address listed in the tax records for the motel property. When the Tax Claim Bureau's certified mailing to Maya was returned unclaimed, it made an effort to locate her. To prove the fact that it had made additional and reasonable efforts to notify Maya, the Tax Claim Bureau offered into evidence a one-page document entitled "Additional Notification Efforts." Reproduced Record at 57a. The document is a pre-printed form that lists a series of information sources, including the current telephone directory, the tax assessment office records, the deeds/wills records, the prothonotary's office, the local tax collector records, the Polk directory and the Tax Claim Bureau. To the right of this column, the form has a column for the date; a third column for searcher name; and a fourth column for result. On the document filled out for Maya's property, the searcher was identified by initial, not name. It showed that two individuals, "NY" and "KD," did the searching.[1] The

1. Searcher "NY" appears next to the current telephone directory, assessment office rec-

ords, prothontary's office, local tax collector records and Polk directory. Searcher "KD"

search result column contained a dash mark after every record listed.

The trial court scheduled a second day of hearing to give the Tax Claim Bureau an opportunity to offer more evidence about its efforts to notify Maya. The trial court observed the meaning of the dash mark was somewhat opaque.

At the subsequent hearing, Steve Letzelter, the Tax Claim Bureau's supervisor, testified. He explained that when a certified letter to a taxpayer is returned unclaimed, the Tax Claim Bureau hires temporary workers on a *per diem* basis to search records for an alternate means to contact the delinquent taxpayer. Letzelter identified the full names of the employees shown on the "Additional Notification Efforts" document by initials, but he was not able to locate them to testify. Letzelter explained that Alan Sprague, the office accountant, trains employees. Letzelter stated that the dash mark in the result column means that a search was done and nothing was found.

Although the search supposedly included County assessment records, the "Additional Notification Efforts" document did not identify Maya's other address in Erie used for the receipt of the tax bills on the other properties she owns. That other address was that of her sister. When asked why the alternate address for Maya was not shown on the "Additional Notification Efforts" document, Letzelter stated that this other address was irrelevant. This is because Maya had not given the Tax Claim Bureau a change of address for the property being sold at tax sale. Letzelter testified that his office had internet capabilities, but it did not attempt to find another address for Maya by this means because it was not required by statute.

appears next to deeds/wills and Tax Claim

Maya then offered the testimony of Charles Pierce, the zoning administrator for Millcreek Township. He testified that his office had contacted Maya over the years regarding the subject property. Its records contain Maya's address and telephone number in Ohio as well as her e-mail address. Over the years, it has used all three ways to communicate with Maya.

The trial court set aside the upset tax sale of Maya's property. It noted that once the notice of the sale sent by certified mail was returned unclaimed, the Tax Claim Bureau was required by statute to take additional and reasonable steps to locate Maya. The Tax Claim Bureau's sole evidence of this effort was its "Additional Notification Efforts" document, which the trial court found not to have probative value. Accordingly, the trial court held that the Tax Claim Bureau did not make a reasonable effort to contact Maya.

The trial court explained its decision to reject the "Additional Notification Efforts" document. Letzelter stated that the dash mark indicated that a record was searched and nothing found; the document itself did not contain a legend or instruction that all of that information was synonymous with the following mark: "-." Even accepting Letzelter's interpretation of "-," the trial court found other problems with the document. First, although the "Additional Notification Efforts" document purportedly showed a search of assessment records, it did not disclose Maya's other address for tax bills on other properties she owned. Second, because the searchers did not testify, there was no basis for finding that they did any search before marking up the document. Letzelter had no personal knowledge of the work done by "NY" and "KD." Given these problems, the trial court concluded the "Additional Notifica-

Bureau records.

tion Efforts" document did not prove anything.

The trial court went on to opine that the Tax Claim Bureau should have sent a certified mailing or first-class mailing to the address provided in the assessment office for Maya's other properties, *i.e.,* the home of Maya's sister. The trial court found that it also would have been reasonable for the Tax Claim Bureau to contact another office, the Millcreek Township Zoning Office, because it was well known that this office dealt routinely with the owners of vacant properties. Had it done so, it would have learned Maya's telephone number and e-mail address. Finally, the trial court found that an internet search would have uncovered Maya's telephone number. In fact, on the bench, the Judge was able to identify Maya's telephone number in Ohio instantly on his own computer. Because the Tax Claim Bureau had internet access, the trial court found that a short internet search was a reasonable effort.

The Tax Claim Bureau appealed to this Court.[2] On appeal, it raises two issues. First, the Tax Claim Bureau contends that the trial court erred in holding that it did not make a reasonable effort to find Maya. It argues that it is unreasonable to expect the Tax Claim Bureau to send a notice to another address in Erie when the address it used was correct; to contact the zoning office; or to conduct an internet search. Second, the Tax Claim Bureau argues that the trial court should not have conducted its own internet search, which left the parties unable to challenge the search and its results.

We begin with a review of the relevant law regarding upset tax sales. Section 602(a) of the Real Estate Tax Sale Law (Tax Sale Law), Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. § 5860.602(a), requires that before an upset sale, the public must be given notice of the sale.[3] In addition, each owner of the property being listed for upset sale must be given notice by certified mail. Section 602(e) states:

(e) In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

(1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.

(2) *If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first class mail, proof of mailing, at his last known post office address by virtue of the knowledge and informa-*

---

2. Our review is limited to a determination of whether the trial court rendered a decision without supporting evidence, erred as a matter of law or abused its discretion. *Pitts v. Delaware County Tax Claim Bureau,* 967 A.2d 1047, 1052 n. 8 (Pa.Cmwlth.2009).

3. It states:

(a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. § 5860.602(a).

tion possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. § 5860.602(e) (emphasis added).

The Tax Sale Law goes on to explain what must be done when the certified mailing to the owner is returned unclaimed. Section 607a(a)[4] states as follows:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification *is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification* by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, *the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to,* a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office,

as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. § 5860.607a(a) (emphasis added). Simply, when a tax claim bureau has a certified mailing returned to it, it must make "reasonable efforts" to learn the whereabouts of the delinquent taxpayer and "notify him." *Id.*

The statutory notice provisions in the Tax Sale Law must be strictly construed lest a person be deprived of property without due process. *Donofrio v. Northampton County Tax Claim Bureau,* 811 A.2d 1120, 1122 (Pa.Cmwlth.2002).[5] It is the tax claim bureau that has the burden of proving compliance with the notice provisions. *Casaday v. Clearfield County Tax Claim Bureau,* 156 Pa.Cmwlth. 317, 627 A.2d 257, 258 (1993). In the case of an unclaimed certified mailing, the tax claim bureau must prove that it made "reasonable efforts to discover the whereabouts of such person or entity and notify him." 72 P.S. § 5860.607a(a). The central question in this case is whether the Tax Claim Bureau proved that it made reasonable efforts to locate Maya and notify her of the pending sale.

The Tax Claim Bureau argues that the trial court erred in holding that its

4. Section 607a was added by the Act of July 3, 1986, P.L. 351.

5. The "formal requirements of Section 602 [of the Tax Sale Law]" need not be followed

when the property owner has received actual notice of the upset tax sale. *Donofrio,* 811 A.2d at 1122.

search was not reasonable because it did not contact the Township Zoning Office or use the internet. What the Tax Claim Bureau does not address is the trial court's rejection of the "Additional Notification Efforts" document, which was the only evidence the Tax Claim Bureau offered to prove that it made an effort to locate Maya. The Tax Claim Bureau does not explain why it was error for the trial court to reject this evidence. Maya argues that the Tax Claim Bureau simply did not meet its burden. We agree.

The Tax Sale Law requires a tax claim bureau to conduct a reasonable search to discover the whereabouts of the taxpayer whose certified notice is returned unclaimed. 72 P.S. § 5860.607a(a). The Tax Sale Law also provides that at the conclusion of the search, "a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act." 72 P.S. § 5860.607a(a). The Tax Claim Bureau offered its "Additional Notification Efforts" document as that notation, but it was rejected. The document's record of the search outcome, *i.e.*, a "-," was ambiguous at best. Because the document did not disclose Maya's other address in Erie used for tax mailings, even though the assessment office records were purportedly searched, it was not reliable. The trial court gave the Tax Claim Bureau a second opportunity to prove its search, but Letzelter could do no more than provide the full names of the two searchers and state that they had been trained by another employee. Letzelter could not explain why the document showed no relevant contact information for Maya in the assessment records when, in fact, her name and an alternate address appeared therein. The Pennsylvania Rules of Evidence allow a court to reject a proffered business record for lack of trustworthiness. *See* PA. R.E. 803.[6] The trial court did not err in rejecting the Bureau's "Additional Notification Efforts" document.

The Tax Claim Bureau argues that because its address for Maya was correct with respect to the motel property, it was not required to notify her at the address listed for her other properties. This argument has been considered and rejected in our precedent.

In *Grove v. Franklin County Tax Claim Bureau*, 705 A.2d 162 (Pa.Cmwlth.1997), *petition for allowance of appeal denied*, 558 Pa. 623, 737 A.2d 745 (1999), the tax claim bureau sent notice of a sale to the taxpayer's correct address, and it was returned unclaimed. The tax claim bureau sent taxpayer a second notice, but its file did not document that it took any additional efforts to discover taxpayer's whereabouts. This Court set aside the sale for the reason that the Tax Sale Law mandates a "reasonable search" even where the first notice was sent to the correct

---

**6.** It states, in relevant part, as follows:

The following statements, as hereinafter defined, are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*   \*   \*

(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, *unless the sources of information or other circumstances indicate lack of trustworthiness.*

PA. R.E. 803(6) (emphasis added).

address. A search must be conducted "regardless of the correctness of the address to which the Bureau sent the notices." *Id.* at 164. Likewise, in *Steinbacher v. Northumberland County Tax Claim Bureau,* 996 A.2d 1095 (Pa.Cmwlth.2010), this Court refused to excuse the tax claim bureau from having to undertake reasonable efforts even though such efforts would have been futile. We explained that the tax sale notice provisions are strictly construed and even where " 'the statutory task is pointless [it] does not excuse its attempted performance.' " *Id.* at 1099 (quoting *Smith v. Tax Claim Bureau of Pike County,* 834 A.2d 1247, 1252 (Pa. Cmwlth.2003)). This is "because it is the reasonableness of the effort that is important, not whether it would have led to discovery of [another] address." *Rice v. Compro Distributing, Inc.,* 901 A.2d 570, 577 (Pa.Cmwlth.2006).

The "Additional Notification Efforts" document was the only evidence proffered to show that the Tax Claim Bureau made a reasonable effort to locate and notify Maya of the upset sale. Because it had no probative value, there was no evidence that the Tax Claim Bureau undertook a reasonable effort to find Maya. It can be argued that a search of the Erie telephone directory, which the Tax Claim Bureau knew did not contain Ohio phone numbers, was not "reasonable," but silly. To be sure, the legislature has identified a telephone directory as a type of source to consult, but it did not foreclose other searches, such as an internet search. The statutory standard is "reasonable search," not minimum necessary. However, in this case, we need not determine the scope and meaning of "reasonable efforts" under Section 607a, because the record is devoid of evidence that the Tax Claim Bureau made any effort at all, let alone a reasonable one, to locate Maya.

For these reasons, we affirm the trial court.

Senior Judge FRIEDMAN concurs in the result only.

### *ORDER*

AND NOW, this 10th day of January, 2013, the order of the Court of Common Pleas of Erie County granting Lynn Fischer Maya's petition to set aside an upset tax sale is hereby AFFIRMED.