IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Upset Tax Sale of : 
September 29, 2014 : 
 : 
Michael Grudsky, : 
          Appellant : 
 : 
        v. : No. 1526 C.D. 2016
 : Argued: April 20, 2017
Lackawanna County Tax Claim : 
Bureau and George Robles : 

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE MICHAEL H. WOJCIK, Judge
               HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION BY
PRESIDENT JUDGE LEAVITT                    FILED: June 8, 2017

        Michael Grudsky appeals an order of the Court of Common Pleas of Lackawanna County (trial court) denying his petition to set aside a tax sale of property he owned. Grudsky contends that the Lackawanna County Tax Claim Bureau (Tax Claim Bureau) did not comply with the notice requirements of the Real Estate Tax Sale Law (Tax Sale Law)[1] and, thus, the trial court erred. We agree and reverse.

        On August 11, 1985, Bella Grudsky purchased "Campsite Lot(s) No. 111" in Eagle Lake, Covington Township, Lackawanna County, for $16,490, and placed her son, Michael Grudsky, on the deed as joint owner. Reproduced Record at 22a (R.R. __). In 1998, Grudsky became the sole owner of the property when his mother died. On September 29, 2014, the property was sold at an upset tax sale

---

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101-5860.803.

to George Robles for $1,377.04. On July 20, 2015, Grudsky filed a petition to set aside the upset tax sale, and the trial court conducted a hearing thereon.

At the hearing, Ronald Koldjeski, Deputy Director of the Tax Claim Bureau, testified about the procedures it followed in this upset tax sale, prompted by the unpaid taxes for 2012 and 2013.[2] The Tax Claim Bureau sent, by certified mail, a notice of the tax sale to 3089 Brighton 6th Street, Apartment 2, Brooklyn, New York, 11235-6966, but it was returned by the postal service as unclaimed. Koldjeski then did a search of records in the County, including those of "the Assessor, the Prothonotary, and Recorder of Deeds." Notes of Testimony at 18 (N.T. __); R.R. 47a. They showed the same address. Last, he checked Pennsylvania voter registration records, but they did not list Grudsky. Because Koldjeski did not find an alternate address, the Tax Claim Bureau sent a second notice to Grudsky at the same Brooklyn address by regular mail; it was not returned by the U.S. Postal Service.

On cross-examination, Koldjeski acknowledged that he did not check the Lackawanna County telephone directory for another address for Grudsky. Koldjeski explained that "[he] didn't think there was a need" because he did not find that Grudsky was registered to vote "anywhere in the Commonwealth." N.T. 17; R.R. 46. Also on cross-examination, Koldjeski stated that he documented his search efforts with handwritten notes in the file, albeit without dates. Those notes did not appear in the file made available to the public.

The purchaser, Robles, next testified. He explained that after purchasing the property at the upset sale, he petitioned the trial court for title to a

---

[2] The parties stipulated that the property was properly posted, that the sale was properly advertised, and that Bella Grudsky was deceased.

2

trailer on the property. The trial court scheduled a hearing for May 20, 2015, and notice was sent to Grudsky at the same address used by the Tax Claim Bureau. Grudsky did not appear at the hearing, and the trial court awarded Robles title to the trailer, which he has repaired.

Mercedes Salazar, Robles' wife, also testified. She stated that the couple has been paying the delinquent school taxes owed on the property with a payment plan, and they have paid all of the Lackawanna County property taxes. They also entered into an installment agreement with Eagle Lake to pay the delinquent homeowners' association dues.

Finally, Grudsky testified. He established that his address is 215 Amherst Street, Brooklyn, New York, 11235. The Brighton 6th Street address used by the Tax Claim Bureau was his parents' address, both of whom are deceased. Grudsky has not lived there since childhood. Grudsky explained that ten years ago the building was refurbished to add apartments. Accordingly, the mailing addresses changed to "Second floor, 2-F and 2-B." N.T. 49; R.R. 78a. Grudsky and his wife own the building.

Grudsky testified that he did not learn about the sale until 2015. His wife informed him

> that there was a letter that they got, like, five days prior to the, what do you call it, to the Court. Not five days, like three days or something. I don't recall which. We couldn't be there or something like that. I don't remember. We received some kind of letter that it was sold already and we were to come to court, but we couldn't come in time.

N.T. 51; R.R. 80a. Grudsky was not sure if the letter was in reference to the property or the trailer.

3

Grudsky stated that he purchased the trailer in 2009 or 2010 and that it was in good condition. It was definitely not in need of significant repairs. He and his family last visited the property in the summer of 2014 and "use[d] the trailer[.]" N.T. 55; R.R. 84a. At the end of the summer, they winterized the trailer.

The trial court found that 3089 Brighton 6th Street, Brooklyn, New York was Grudsky's proper mailing address. It based this finding on a comment made by Grudsky in the course of examination by his counsel:

> [Counsel] Residence address, please.
>
> [Grudsky] 215 Amherst Street, Brooklyn, New York, 11235.
>
> [Counsel] What address is the 3089 Brighton 6th Street address? What is that?
>
> [Grudsky] That's the home of my deceased parents.
>
> [Counsel] And who lives there now?
>
> [Grudsky] Wanting to get out.
>
> [Court Reporter] I'm sorry, what was that?
>
> [Grudsky] Wanting to get out. We --
>
> [Court Reporter] I'm not sure --
>
> [Counsel] When you say we, who owns that property?
>
> [Grudsky] Me and my wife.

N.T. 48; R.R. 77a. The trial court found that the response "wanting to get out" demonstrated that Grudsky lived at 3089 Brighton 6th Street, Brooklyn, New York 11235. Although the Tax Claim Bureau acknowledged that it did not search any telephone directory, the trial court concluded that "nothing in the record suggests that a telephone directory search would have revealed anything other than the same

4

address to which the notices were mailed." Trial Court Op. at 5. Accordingly, the trial court denied Grudsky's petition to set aside the tax upset sale.

Grudsky appealed to this Court.[3] In his first issue, he contends that the Tax Claim Bureau's acknowledged failure to search the Lackawanna County telephone directories invalidates the tax sale. In his second issue, he contends that Koldjeski's failure to document the date of his searches of various court records invalidates the tax sale.

We begin with a review of the Tax Sale Law. Its notice provisions must be strictly construed lest a person be deprived of property without due process. *Donofrio v. Northampton County Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa. Cmwlth. 2002). Further, the tax claim bureau bears the burden of proving strict compliance with the notice provisions. *Casaday v. Clearfield County Tax Claim Bureau*, 627 A.2d 257, 258 (Pa. 1993).

The Tax Sale Law requires that advance notice of the sale be given to members of the public.[4] It also requires the tax claim bureau to notify each owner of the property. Section 602(e) states:

---

[3] In tax sale cases, our review determines whether the trial court abused its discretion, erred as a matter of law or rendered a decision with lack of supporting evidence. *Pitts v. Delaware County Tax Claim Bureau*, 967 A.2d 1047, 1052 n.8 (Pa. Cmwlth. 2009).

[4] Section 602(a) states:

> (a) At least thirty (30) days prior to any scheduled sale the bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are published therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, (5) the descriptions of the properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. §5860.602(a). The parties have stipulated that public notice was properly given.

5

(e)   In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:

> (1)   At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this act.
>
> (2)   *If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner* who failed to acknowledge the first notice by United States first class mail, proof of mailing, *at his last known post office address* by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.

72 P.S. §5860.602(e) (emphasis added).  In sum, the tax claim bureau must notify the owner of the property by certified mail and then by first class mail.

Where the certified mailing is returned unclaimed, the tax claim bureau must take additional steps to notify the property owner.  Section 607.1 of the Tax Sale Law[5] states as follows:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not

---

[5] Added by the Act of July 3, 1986, P.L. 351.

6

returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, *the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property.* When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in this act.

72 P.S. §5860.607a (emphasis added). Relevant here is the statutory directive that the tax claim bureau "exercise reasonable efforts" to discover the whereabouts of the property owner and notify him. *Id.* Those efforts "*shall* include, *but not necessarily be restricted to*, a search of current telephone directories for the county...." *Id.* (emphasis added).

Grudsky contends that the Tax Claim Bureau did not make "reasonable efforts to discover" his whereabouts because it did not make "a search of current telephone directories for the county ...." 72 P.S. §5860.607a. For that reason alone, the Tax Claim Bureau did not establish that it made "reasonable efforts" to discover his whereabouts "and notify him," as required by Section 607.1 of the Tax Sale Law. *Id.*

The Tax Claim Bureau responds that because Grudsky was a resident of New York, it had no obligation to check any telephone directories in Lackawanna County or elsewhere. In support, it cites *In re Tax Sale of Real Property Situated in Jefferson Township*, 828 A.2d 475 (Pa. Cmwlth. 2003).

7

*Jefferson Township* involved the tax sale of property located in Somerset County. The tax claim bureau sent the notice by certified mail to the owner's address in Allegheny County, which was the correct address. When the certified mailing was returned, the tax claim bureau did the searches set forth in Section 607.1 but did not find an alternate address. The owner argued that the tax claim bureau should have done more. In support, she observed

> (1) that her home and office phone numbers were easily obtainable through an internet search; (2) that she was a public figure in Allegheny County, previously as a judge of the court of common pleas and then the public defender of Allegheny County; (3) that the local attorney who prepared the deed could have been obtained through a search of the recorder of deeds records and he in turn could have notified [her] of the impending sale; and (4) that since the [b]ureau knew [she] was a resident of Allegheny County, it could have searched the Allegheny County phone book.

*Id.* at 478. We rejected the owner's argument. We held that the tax claim bureau was not obligated to do more where it "is satisfied through other efforts that it has the owner's correct address on file." *Id*. at 480. Specifically, it was not obligated to check the telephone directories of Allegheny County.

*Jefferson Township* is inapposite. Here, the Tax Claim Bureau did not check current telephone directories *within* Lackawanna County, which is specifically required by Section 607.1 of the Tax Sale Law. There is no air in the Tax Sale Law on the minimum search requirement.

*Maya v. County of Erie Tax Claim Bureau*, 59 A.3d 50 (Pa. Cmwlth. 2013), is dispositive of what constitutes "reasonable efforts to discover the whereabouts" of a property owner. 72 P.S. §5860.607a. In *Maya*, the tax claim bureau sent the owner notice of the upset tax sale of her Pennsylvania property by

8

certified mail to her address in Ohio. When it was returned unclaimed, the tax claim bureau did a search that led it to conclude that the address in Ohio was correct. Accordingly, it sent the notice to the same address by first class mail, as required by Section 607.1. The property was sold, and a notice of the sale was sent to the Ohio address. The property owner then petitioned to set aside the tax sale, asserting the notice of sale was the first and only notice she ever received.

At the hearing, the property owner testified that she lived at the Ohio address listed in the tax claim bureau's records. She explained that her mail was not delivered to her house but to a bank of mailboxes approximately a quarter-mile from her house. The mail was sometimes placed in the wrong box by postal authorities, and the mailboxes have been the target of vandalism. Although certified letters are delivered to the house, she was not at home during regular delivery hours. She received the certified mail notice of the upset tax sale only because her husband happened to be home when the mail was delivered. The property owner testified that she owned two other properties in Erie, and assessment records for those properties listed her sister's residence in Erie as the address for all notices. Had the tax claim bureau searched any of these county records, it would have found an alternate address.

The trial court set aside the upset sale. The search notations shown in the file were made by temporary workers, who left only their initials not their names. The trial court concluded that these anonymous notations were not a substitute for testimony by the persons who did the searches. Further, the notations were wrong. They indicated that the Erie County assessment records had been searched, but this was not true. Such a search, if actually done, would have uncovered taxpayer's other Erie properties and another address. The trial court

9

also held that a "reasonable" effort would have included contacting the township zoning office or searching the internet. At the hearing, the judge presiding over the proceeding did an internet search and instantly learned the property owner's telephone number in Ohio.

On appeal to this Court, the tax claim bureau argued that because all of the notices were mailed to the property owner's correct address, it had no obligation to search for her other "whereabouts." The tax claim bureau had no obligation to contact the zoning office or do an internet search.

We affirmed the trial court, explaining that precedent has long held that even where the tax claim bureau has the correct address, it must make a reasonable effort to locate the property owner when the certified mailing is returned unclaimed. We rejected the tax claim bureau's argument that if the address it used was correct, it was excused from having to undertake the steps identified in Section 607.1 of the Tax Sale Law as examples of a reasonable effort to locate the property owner. We explained that "[t]his argument has been considered and rejected in our precedent" as follows:

> In *Grove v. Franklin County Tax Claim Bureau*, 705 A.2d 162 (Pa.Cmwlth.1997), *petition for allowance of appeal denied,* 558 Pa. 623, 737 A.2d 745 (1999), the tax claim bureau sent notice of a sale to the taxpayer's correct address, and it was returned unclaimed. The tax claim bureau sent taxpayer a second notice, but its file did not document that it took any additional efforts to discover taxpayer's whereabouts. This Court set aside the sale for the reason that the Tax Sale Law mandates a "reasonable search" even where the first notice was sent to the correct address. A search must be conducted "regardless of the correctness of the address to which the Bureau sent the notices." *Id.* at 164. Likewise, in *Steinbacher v. Northumberland County Tax Claim Bureau*, 996 A.2d 1095 (Pa. Cmwlth. 2010), this Court refused to excuse the tax claim bureau from having to undertake reasonable efforts even though

10

> such efforts would have been futile. We explained that the tax sale notice provisions are strictly construed and even where "'the statutory task is pointless [it] does not excuse its attempted performance.'" *Id*. at 1099 (quoting *Smith v. Tax Claim Bureau of Pike County*, 834 A.2d 1247, 1252 (Pa. Cmwlth. 2003)). This is "because it is the reasonableness of the effort that is important, not whether it would have led to discovery of [another] address." *Rice v. Compro Distributing, Inc.*, 901 A.2d 570, 577 (Pa. Cmwlth. 2006).

*Maya*, 59 A.3d at 56-57.

We reiterated that reasonable efforts must be made "even though such efforts would have been futile." *Id.* at 57. We did not determine whether a "reasonable effort" should include contacting the zoning office or doing an internet search, as held by the trial court. Nevertheless, we cautioned that the statutory standard is "reasonable effort" and not the "minimum necessary." *Id.* The statute leaves open the possibility that a tax claim bureau's "reasonable" effort is "not necessarily … restricted to" the searches listed in 607.1 of the Tax Sale Law. 72 P.S. §5860.607a.

*Maya* did not announce a new principle. It followed precedent, most notably *Steinbacher*, 996 A.2d 1095, where this Court held that all the specific searches listed in Section 607.1 of the Tax Sale Law must be done even where they would not produce an alternate address. In *Steinbacher*, one property owner received all the tax sale notices, but her husband, from whom she was separated, did not. This Court set aside the tax sale because the tax claim bureau failed to make the searches of county records listed in Section 607.1. We reversed the trial court's decision to excuse the tax claim bureau from these searches even though the searches would have been futile, inasmuch as the missing owner did not reside in the county. We held that "strict compliance with the [Tax Sale] Law's notice provisions is essential to prevent the deprivation of property without due process."

11

*Steinbacher*, 996 A.2d at 1099. As such, it was irrelevant whether the statutorily mandated search would have been successful.

Here, the trial court erred in excusing the Tax Claim Bureau's failure to search current telephone directories of Lackawanna County on grounds of futility.[6] The Tax Claim Bureau was required, at a minimum, to do "a search of current telephone directories for the county," and this was not done. Section 607.1 of the Tax Sale Law, 72 P.S. §5860.607a. As such, the Tax Claim Bureau did not meet its burden of proving that it made "reasonable efforts to discover the whereabouts of the owner and notify him." *Id.*

Accordingly, the order of the trial court is reversed and the tax sale set aside.[7]

_____
MARY HANNAH LEAVITT, President Judge

Judge Cosgrove did not participate in the decision in this case.

---

[6] Grudsky's absence from the Pennsylvania voter registration rolls is meaningless. Unregistered voters are permitted to possess telephones. That information or lack thereof did not excuse the Tax Claim Bureau.

[7] Because we reverse, we need not address Grudsky's second claim of error, *i.e.,* that Koldjeski's failure to document the date of his searches of court records invalidates the tax sale.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Upset Tax Sale of         :
September 29, 2014             :
                                     :
Michael Grudsky,               :
            Appellant          :
                                       :
              v.                 :  No. 1526 C.D. 2016
                                       :
Lackawanna County Tax Claim    :
Bureau and George Robles       :

# **O R D E R**

AND NOW, this 8th day of June, 2017, the order of the Court of Common Pleas of Lackawanna County, dated August 3, 2016, denying Michael Grudsky's Petition to Set Aside the Upset Tax Sale is REVERSED and the September 29, 2014, sale of Michael Grudsky's property is hereby SET ASIDE.

_____
MARY HANNAH LEAVITT, President Judge