IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Sale of Tax Delinquent Property :  
on October 19, 2020   :  
  :   No. 49 C.D. 2021
Appeal of: Richard Hovanec   :   Argued: October 10, 2023

BEFORE:   HONORABLE ANNE E. COVEY, Judge
            HONORABLE LORI A. DUMAS, Judge
            HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION BY
JUDGE COVEY                             FILED: January 4, 2024

        Richard Hovanec (Hovanec) appeals from the Fayette County (County) Common Pleas Court's (trial court) January 4, 2021 order[1] granting Debra Collins' (Collins) Exceptions to Upset Tax Sale (Tax Sale) of her property located at 1262 Connellsville Road, Lemont Furnace, North Union Township, Pennsylvania (1262 Property) (Exceptions) and her Petition to Set Aside the Tax Sale (Petition). Essentially, Hovanec presents one issue for this Court's review: whether the trial court erred or abused its discretion by voiding the Tax Sale.[2] After review, this Court affirms.

        Collins lives at 1260 Connellsville Road, Lemont Furnace, North Union Township, Pennsylvania (1260 Property). Collins also owns the adjoining

_____

[1] Although the trial court's order was dated December 22, 2020, it was entered on the docket on January 4, 2021.

[2] In his Statement of the Questions Involved, Hovanec sets forth that the trial court erred or abused its discretion by: (1) voiding the Tax Sale despite that the County Tax Claim Bureau (Bureau) complied with the statutory notice requirements; (2) concluding that Collins' misunderstanding, confusion, and oversight regarding her tax obligations established lack of actual notice and justified voiding the Tax Sale; (3) concluding that the Bureau had a duty to help Collins identify which taxes she had to pay to prevent the Tax Sale; and (4) applying equity to void the Tax Sale despite the Bureau's compliance with the law. *See* Hovanec Br. at 4-5. This Court addresses Hovanec's latter three issues as part of its analysis of the first issue.

1.87-acre 1262 Property, which she leases to the operator of a commercial auto repair business.[3]  In March 2019, the County Tax Claim Bureau (Bureau) notified Collins that she owed $809.25 for the 2018 taxes on the 1262 Property (delinquent 2018 taxes), and warned her that her failure to pay the outstanding amount could result in the 1262 Property being sold at a tax sale.  In 2018, 2019, and 2020, Collins paid the taxes on the 1260 Property and the 1262 Property; however, because she believed the taxes on the 1262 Property were then current, she did not pay the delinquent 2018 taxes.  On July 6, 2020, the Bureau posted the 1262 Property with notice of the Tax Sale (Posted Notice).  On August 24, 2020, Collins paid $1,000.00 in person at the Bureau office to satisfy the delinquent 2018 taxes and a portion of the 2019 taxes on the 1260 Property, believing that she was in jeopardy of losing her home.  On September 25, 2020, the Bureau sent Collins notice 10 days in advance of the Tax Sale (10-Day Letter).  On October 19, 2020, Hovanec purchased the 1262 Property at the Tax Sale.  Thereafter, the Bureau notified Collins that the 1262 Property had been sold at the Tax Sale (Post-Sale Notice).

On October 20, 2020, Collins filed the Exceptions and the Petition in the trial court.  On November 10, 2020, Hovanec filed a petition to intervene, which the trial court granted on November 13, 2020.  The trial court conducted a hearing on December 22, 2020, at which Collins and Bureau representative Sarah Friend (Friend) testified.  That same day, the trial court ruled that Collins had not received actual notice of the Tax Sale, *see* Reproduced Record (R.R.) at 45a, granted the Petition, and set aside the Tax Sale pending Collins' payment of the delinquent 2018 taxes by December 30, 2020.  Hovanec appealed to this Court.[4]

---

[3] Collins purchased the 1262 Property on May 5, 1999, for $95,000.00.  *See* Reproduced Record at 9a.  The 1260 Property is Collins' designated mailing address for the 1262 Property.

[4] This Court's review is limited to determining whether constitutional rights or local agency procedures were violated, whether an error of law was committed, or whether the findings of fact

On January 21, 2021, the trial court directed Hovanec to file a Concise Statement of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b) (Rule 1925(b) Statement). Hovanec timely filed his Rule 1925(b) Statement. On March 19, 2021, the trial court filed its opinion pursuant to Rule 1925(a) (Rule 1925(a) Opinion).[5]

Hovanec argues that the trial court erred or abused its discretion by voiding the Tax Sale despite the Bureau's compliance with the statutory notice requirements. Specifically, Hovanec asserts that the trial court erred or abused its discretion by concluding: (1) that Collins' misunderstanding, confusion, and oversight regarding her tax payments established lack of actual notice and justified voiding the Tax Sale; (2) that the Bureau had a duty to help Collins identify which taxes she had to pay to prevent the Tax Sale; and (3) that the trial court could apply equity to void the Tax Sale despite the Bureau's compliance with the law.

Initially, "the collection of taxes may not be implemented without due process of law." *Husak v. Fayette Cnty. Tax Claim Bureau*, 61 A.3d 302, 312 (Pa. Cmwlth. 2013). This Court has explained:

> A property owner's right to notice "prior to commencing with an upset tax sale [is] established pursuant to the Due Process Clause of the Fourteenth Amendment to the United States [(U.S.)] Constitution[, U.S. Const. amend. XIV, § 1,] and by the [Real Estate Tax Sale Law (RETSL)]."[6] *Rice v. Compro Distrib*[.]*, Inc.*, 901 A.2d 570, 574 (Pa. Cmwlth. 2006). The [U.S.] Supreme Court has held that due process is implicated in any taking of property for the collection of taxes, stating:
>
>> [P]eople must pay their taxes, and the government may hold citizens accountable for tax delinquency

were unsupported by substantial evidence. *See* Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b).

[5] The Bureau joined in Collins' brief on appeal to this Court.

[6] Act of July 7, 1947, P.L. 1368, *as amended*, 72 P.S. §§ 5860.101-5860.803.

> by taking their property. But before forcing a citizen to satisfy his debt by forfeiting his property, due process requires the government to provide adequate notice of the impending taking.
>
> *Jones v. Flowers*, 547 U.S. 220 . . . (2006). Due process is satisfied when the [tax claim b]ureau, before commencing with a tax sale, "provide[s] 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent[.] Hanover Bank & T[r.] Co.*, 339 U.S. 306 . . . (1950)).

*In re Consol. Reps. & Return by the Tax Claim Bureau of Northumberland Cnty. of Props.*, 132 A.3d 637, 644 (Pa. Cmwlth. 2016) (*en banc*) (*Appeal of Neff*).

To ensure Pennsylvania property owners are afforded proper due process, the General Assembly enacted Section 602 of the RETSL, 72 P.S. § 5860.602, wherein it specified the forms of notice a tax claim bureau shall provide a property owner before exposing a property to an upset tax sale.[7] Section 602(e)(1) of the RETSL requires a tax claim bureau to provide notice of a tax sale "[a]t least thirty (30) days before the date of the sale, by [U.S.] **certified mail**, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by [the RETSL]." 72 P.S. § 5860.602(e)(1) (emphasis added). Section 602(a) of the RETSL also specifies:

> At least thirty (30) days prior to any scheduled sale[,] the [tax claim] bureau shall give notice thereof, not less than once in two (2) newspapers of general circulation in the county, if so many are **published** therein, and once in the legal journal, if any, designated by the court for the publication of legal notices. Such notice shall set forth (1) the purposes of such sale, (2) the time of such sale, (3) the place of such sale, (4) the terms of the sale including the approximate upset price, [and] (5) the descriptions of the

---

[7] Section 601(a)(3) of the RETSL, 72 P.S. § 5860.601(a)(3), sets forth additional notice requirements for owner-occupied properties.

4

properties to be sold as stated in the claims entered and the name of the owner.

72 P.S. § 5860.602(a) (emphasis added). Section 602(e)(3) of the RETSL further mandates that "[e]ach property scheduled for sale shall be **posted** at least ten (10) days prior to the sale." 72 P.S. § 5860.602(e)(3) (emphasis added). The General Assembly, through "[t]he [RETSL,] requires that advance notice of [an upset tax] sale be given **to members of the public** . . . [**and**] **each owner** of the property." *In re Upset Tax Sale of Sept. 29, 2014*, 163 A.3d 1072, 1074-75 (Pa. Cmwlth. 2017) (footnote omitted; emphasis added).

At the trial court hearing in the instant case, Friend explained that Collins made a tax payment to the Bureau for the 1262 Property on November 29, 2018, but the check therefor reflected that it was a payment for the 2017 taxes owed, which left $809.25 owing for the delinquent 2018 taxes on the 1262 Property. *See* R.R. at 30a-31a, 55a-57a. She testified that the Bureau sent a Notice of Return and Claim (Notice of Return) dated March 19, 2019, to Collins' 1260 Property informing Collins that the 1262 Property was "returned to the [Bureau] for non-payment of taxes" and, unless the taxes, penalties, and fees were paid or exceptions filed, the 1262 Property could be sold without her consent. R.R. at 52a; *see also* R.R. at 29a. Friend confirmed that Collins signed the Notice of Return's return receipt card on April 5, 2019, and the trial court admitted the documentation into the record. *See* R.R. at 29a, 53a.

Friend further claimed that, in June 2020, the Bureau notified Collins by certified mail, return receipt requested, at her 1260 Property, that her failure to pay the delinquent 2018 taxes placed the 1262 Property in danger of a public tax sale, and instructed her to call the Bureau office for the tax payoff amount (Notice Letter). *See* R.R. at 21a, 23a. The Bureau did not produce the Notice Letter or Collins' signed return receipt card at the hearing for admission into the record.

5

Friend also testified that, on July 6, 2020, the Bureau placed the Posted Notice at the 1262 Property, which declared that unless Collins paid the overdue taxes or filed exceptions, the 1262 Property would be sold at a public tax sale on September 21, 2020. *See* R.R. at 21a, 24a, 28a, 49a-51a. Although the Posted Notice reflected, *inter alia*, that the Tax Sale "will be published once in newspapers of general circulation and the Fayette Legal Journal[,]" R.R. at 51a, **Friend did not testify that the Bureau published notice of the Tax Sale**, **and the Bureau did not introduce proof of publication**.

Friend further stated that, on September 25, 2020, the Bureau sent the 10-Day Letter to Collins by certified mail, return receipt requested, at her 1260 Property informing her that the 1262 Property would be sold at a Tax Sale. *See* R.R. at 22a, 24a, 29a-30a, 54a. The Bureau did not produce the 10-Day Letter or Collins' signed return receipt at the hearing for admission into the record.

Collins testified that she has owned the 1262 Property for 21 years. *See* R.R. at 34a. She stated, and Friend agreed, that Collins paid the 2019 taxes due on the 1262 Property as follows: $499.13 and $40.45 on April 26, 2019, and $1,861.30 on December 27, 2019. *See* R.R. at 10a, 37a-38a. Collins explained that she paid the Bureau $600.00 on January 31, 2020, and $700.00 on February 28, 2020, in person at the Bureau office for the 1260 Property. *See* R.R. at 23a, 25a. Collins further recalled that, on June 29, 2020, she paid $666.05 in taxes on the 1262 Property. *See* R.R. at 38a-39a. On August 24, 2020, Collins paid $1,000.00 in person at the Bureau office to satisfy the delinquent 2018 taxes and a portion of the 2019 taxes on the 1260 Property, believing that she was in jeopardy of losing her home. *See id.* Collins declared that her failure to pay the delinquent 2018 taxes on the 1262 Property was unintentional, as she thought she had paid them. *See* R.R. at 40a.

6

Collins stated that she did not see the Posted Notice at the 1262 Property, but admitted that she received the 10-Day Letter.[8]  *See* R.R. at 35a.  After the Tax Sale, Collins obtained documentation that she had owed $809.25 for the delinquent 2018 taxes on the 1262 Property, which she claimed she could have/would have paid if she had been aware that the 1262 Property's 2018 taxes remained delinquent.  *See* R.R. at 7a, 11a, 22a, 39a-40a.

The trial court found Collins' testimony credible, and overturned the Tax Sale "[b]ecause the [Bureau] failed to notify [] Collins that her payments should go towards her [delinquent] 2018 taxes for the 1262 Property when she came into the [Bureau o]ffice in August of 2020, [] [and] found that [] Collins did not receive proper notice."  Rule 1925(a) Op. at 3.  The trial court reasoned:

> [T]he [Bureau] **may have** complied with the statutory requirements of the [RETSL] in this case, but it failed to provide [] Collins with actual notice that the 1262 Property was in jeopardy of being sold at the 2020 [T]ax [S]ale. Specifically, [] Collins went to the [Bureau o]ffice on three separate occasions in 2020 in order to pay [the] taxes on her [P]roperties.  The [Bureau o]ffice apparently never informed [] Collins while she was there that she should pay for her delinquent 2018 county and local taxes for the 1262 Property.  This is even more frustrating as [] Collins actually paid her 2019 and 2020 county and local taxes *on the 1262 Property*.  Additionally, [] Collins went into the [Bureau o]ffice in August of 2020, after receiving notice that the 1262 Property was delinquent on taxes.  Instead of being directed to pay her delinquent taxes of $809.26 on the 1262 Property, [] Collins instead paid $1,000[.00] for taxes on [the 1260 P]roperty, which she falsely believed was in jeopardy of being sold at a tax sale.  Had she used that available money to pay for the 1262 Property's delinquent [2018] taxes, neither [P]roperty would have been at risk of being sold at the 2020 [Tax Sale].

---

[8] The Bureau's certified mailing log reflects that the Bureau sent the 10-Day Letter to Collins, but does not show that the Bureau received Collins' signed return receipt. Notwithstanding, Collins admitted that she received the 10-Day Letter.  *See* R.R. at 35a, 54a.

> Because the [Bureau] failed to help [] Collins identify which taxes should have been paid in order to protect her 1262 Property from being sold at the 2020 [Tax Sale] when she showed up in person at the [Bureau o]ffice in August of 2020, this [trial c]ourt found that [] Collins was effectively deprived of notice. As such, [] Collins was [] deprived of due process prior to her [1262] Property being sold . . . .

Rule 1925(a) Op. at 5-6 (bold emphasis added; italic emphasis in original).

"Our Supreme Court has said that tax sale laws 'were never meant to punish taxpayers who omitted through oversight or error (from which the best of us are never exempt) to pay their taxes.'" *Appeal of Neff*, 132 A.3d at 650 (quoting *In re Return of Sale of Tax Claim Bureau (Ross Appeal)*, 76 A.2d 749, 753 (Pa. 1950)). However, this Court acknowledges that, in *Appeal of Marra*, 571 A.2d 551 (Pa. Cmwlth. 1990), it stated:

> This Court has never before held and refuses to hold now that a taxpayer's mere assertions of mistaken beliefs are sufficient to overturn a tax sale and deny the rights of valid purchasers who followed proper procedure. To hold otherwise would seriously jeopardize the ability of the taxing authorities to recover unpaid taxes through tax sales of property since there would be no certainty as to whether a subsequent purchaser could gain clear title.

*Id*. at 554.

Further, in *Auston v. County of Northampton Tax Claim Bureau* (Pa. Cmwlth. No. 1842 C.D. 2019, filed January 12, 2021),[9] this Court affirmed the trial court's order denying an owner's exceptions to the upset sale of her property where the owner mistakenly paid a 2017-2018 school tax bill for her property, leaving her 2016-2017 school tax bill unpaid, and the tax claim bureau had fully complied with the RETSL's notice requirements. The owner argued that the tax claim bureau

---

[9] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Auston* is cited for its persuasive value.

should have applied her property tax payments to the earlier debt. This Court concluded that "the RETSL does not contain a provision that would require the [tax claim bureau] to automatically apply a property owner's tax payments first to delinquent taxes, satisfying the oldest outstanding balance prior to current taxes[,]" and "the [tax claim bureau] did not make any misrepresentations to [the property o]wner that it would adopt [a] procedure beyond its existing upset tax sale requirements as outlined in the RETSL." *Auston*, slip op. at 7-8.

In addition, the law is well settled:

> When the rights of a party are clearly established by defined principles of law, equity should not change or unsettle those rights. Equity follows the law.
>
> *First Fed*[.] *Sav*[.] [*&*] *Loan Ass*[']*n v. Swift*, . . . 321 A.2d 895, 897 ([Pa.] 1974) (citations omitted).
>
> The rights of all parties to a tax sale are defined and governed by statute. "[W]henever there is a direct rule of law governing the case in all its circumstances, the [equity] court is as much bound by it as would be a court of law. . . . " Where, as here, the parties' rights are regulated and fixed by a comprehensive scheme of legislation, the maxim "equity follows the law" is entitled to the greatest deference.
>
> *Id*. . . . at 898 (citations omitted). Thus, to the extent that the provisions of the [RETSL] govern the circumstances of a tax sale case, equity will follow the [RETSL].

*Piper v. Tax Claim Bureau of Westmoreland Cnty.*, 910 A.2d 162, 165 (Pa. Cmwlth. 2006). Thus, case law makes clear that the trial court in the instant case lacked authority to apply equity to correct the effect of Collins' misunderstanding, either by apprising her of the ongoing delinquency on the 1262 Property when she paid the 1260 Property taxes at the Bureau office in 2020, or by applying her other tax payments to the 1262 Property's 2018 debt.

9

Nevertheless,

> "[t]he prohibition against the deprivation of property without due process of law reflects the high value, embedded in our constitutional and political history, that we place on a person's right to enjoy what is his, free of governmental interference." *Fuentes v. Shevin*, 407 U.S. 67, 81 . . . (1972). Due process is implicated in any taking of property for the collection of taxes. [*See*] *Sampson v. Tax Claim Bureau of Chester C*[*nty.*], 151 A.3d 1163 . . . (Pa. Cmwlth. 2016). [The] RETSL is for the collection of taxes and is not intended to create investment opportunities for others, or to strip taxpayers of their properties.

*Brodhead Creek Assocs., LLC v. Cnty. of Monroe*, 231 A.3d 69, 74 (Pa. Cmwlth. 2020). Thus, "[i]t is [also] well settled that . . . strict compliance with the [RETSL's] notice provisions is essential to prevent the deprivation of property without due process." *Est. of Marra v. Tax Claim Bureau of Lackawanna Cnty.*, 95 A.3d 951, 956 (Pa. Cmwlth. 2014). Accordingly,

> [i]n all tax sale cases, the tax claim bureau "has the burden of proving compliance with the statutory notice provisions." *Krawec v. Carbon* [*Cnty.*] *Tax Claim Bureau*, 842 A.2d 520, 523 (Pa. Cmwlth. 2004). Section 602 [of the RETSL] requires **three different forms** of notice to property owners prior to an upset tax sale: **publication**, **posting**, **and mail**.[10] "If any of the three types of notice is defective, the tax sale is void." *Gladstone v. Fed*[.] *Nat*[*'l*] *Mortg*[.] *Ass*[*'n*], 819 A.2d 171, 173 (Pa. Cmwlth. 2003).

*Appeal of Neff*, 132 A.3d at 644-45 (emphasis added; footnote omitted); *see also Donofrio v. Northampton Cnty. Tax Claim Bureau*, 811 A.2d 1120, 1122 (Pa.

---

[10] Relative to the mailings, although the tax claim bureau need not show that a property owner actually *received* notice of a tax sale, it must show that it *sent* all required notices. *See FS Partners v. York Cnty. Tax Claim Bureau*, 132 A.3d 577 (Pa. Cmwlth. 2016); *see also* Section 602(h) of the RETSL, 72 P.S. § 5860.602(h) ("No sale shall be defeated and no title to property sold shall be invalidated because of proof that mail notice as herein required was not received by the owner, provided such notice was given as prescribed by this section.").

Cmwlth. 2002) (Section 602 of the RETSL's "notice provisions are to be strictly construed, and . . . if any one is defective, the sale is void."). Ultimately, "the courts are responsible for applying the [RETSL] in such a manner as to afford property owners due process of law with respect to tax sales." *Schooley v. Beaver Cnty. Tax Claim Bureau*, 4 A.3d 797, 800 (Pa. Cmwlth. 2010).

This Court observes that, here, the Bureau did not produce copies of the Notice Letter or the Post-Sale Letter at the trial court hearing. Further, the Posted Notice the Bureau produced for the record stated that if Collins failed to take action, the Tax Sale would occur on September 21, 2020, *when in fact the Tax Sale occurred* on October 19, 2020.[11] In addition, although Collins admitted that she received the 10-Day Letter, this Court is unable to determine what Tax Sale date the Bureau specified therein because it was not included in the record. *See* R.R. at 35a, 54a. Most importantly here, **the Bureau did not provide testimony or produce proof that it published the Tax Sale** notice in newspapers of general circulation and/or the Fayette Legal Journal.[12] In the absence of such evidence, the Bureau failed to

---

[11] This Court acknowledges that Section 601(a) of the RETSL provides, in relevant part:

> The bureau shall schedule the date of the sale no earlier than the second Monday of September and before October 1, and the sale may be adjourned, readjourned or continued. No additional notice of sale is required when the sale is adjourned, readjourned or continued if the sale is held by the end of the calendar year.

72 P.S. § 5860.601(a). However, "this Court applies Section 601(a) [of the RETSL], permitting the sale to be rescheduled without additional notice, only where all statutory notice requirements for the original sale are satisfied. That did not occur here." *In re Upset Sale Tax Claim Bureau of Luzerne Cnty. Pa. Held Dec. 11, 2008*, 990 A.2d 136, 140 (Pa. Cmwlth. 2010). In the instant case, there is no record evidence that the Tax Sale was adjourned, readjourned, or continued.

[12] The Bureau joined the statement in Hovanec's brief that "the Bureau introduced evidence showing that it complied with all of the **certified mail** and **posting** requirements set forth in Section 602(e) of the [RETSL] . . . ." Hovanec Br. at 13 (emphasis added). Neither the Bureau nor Hovanec assert that the Bureau complied with Section 602(a) of the RETSL's notice publication requirement. In her brief, Collins agreed that the "Bureau technically complied with the statutory notice provisions of [Section 602(e) of the RETSL (relating to certified mailing and

establish that Collins received the due process to which she was entitled before the Bureau exposed her 1262 Property for the Tax Sale.

Hovanec, joined by the Bureau, points out that "Collins did not contend at the hearing that the Bureau failed to comply with required notice procedures for the [T]ax [S]ale, and she did not present any evidence or argument challenging the Bureau's compliance with [the RETSL]." Hovanec Br. at 7-8. This Court acknowledges that when the Bureau's counsel asked Collins: "[Y]our [sic] not challenging . . . that . . . [the Bureau] . . . didn't follow the procedures in regard to notifying property owners about delinquent taxes, is that right?" Collins responded: "Correct."[13] R.R. at 42a. The trial court and this Court agree that Collins did not appear to challenge the Board's pre-Tax Sale notice at the hearing. However, because the Bureau's notice requirements were a statutorily-mandated condition precedent to a valid tax sale, neither the trial court's nor Collins' lay, post-Tax Sale belief or agreement that the Bureau satisfied all of the notice requirements waived the Bureau's duty to present evidence of compliance at the hearing. Thus, the Bureau's failure to establish on the record that it published notice of the Tax Sale pursuant to Section 602(a) of the RETSL was alone a sufficient basis to set aside the Tax Sale.[14]

---

posting] . . . ." Collins Br. at 1. However, Collins erroneously represented in her brief to this Court that the "Bureau undertook the necessary action . . . to comply with the statutory notice requirements by *advertising the sale*, posting the [P]roperty[,] and sending a letter by certified mail to Collins[,] (R[.]R[.] 20a-22a)[,]" Collins Br. at 5 (emphasis added), as nowhere in the record does the Bureau mention that it actually advertised or published notice of the Tax Sale of the 1262 Property.

[13] In his brief to this Court, joined by the Bureau, Hovanec repeatedly states that "there is no dispute that the Bureau complied with the statute[.]" Hovanec Br. at 14; *see also* Hovanec Br. at 7-10, 12-13.

[14] Although this Court has repeatedly held that "strict compliance with the notice requirements of Section 602 [of the RETSL] is not required when the [b]ureau proves that a property owner received actual notice of a pending tax sale[,] *Sabbeth v. Tax Claim Bureau of*

Because the Bureau did not produce evidence that it published notice of the 1262 Property's Tax Sale in accordance with Section 602(a) of the RETSL, the Bureau has failed to meet its "burden of proving compliance with the statutory notice provisions." *Appeal of Neff*, 132 A.3d at 644-45 (quoting *Krawec*, 842 A.2d at 523). Accordingly, the Tax Sale must be set aside and this Court need not reach Collins' actual notice issue.[15] Accordingly, this Court holds, albeit on different grounds, that the trial court properly granted Collins' Exceptions and Petition and set aside the Tax Sale.[16]

Based on the foregoing, the trial court's order is affirmed.

_____
ANNE E. COVEY, Judge

---

*Fulton* [*Cnty.*], 714 A.2d 514 . . . (Pa. Cmwlth. 1998)[;]" *Appeal of Neff*, 132 A.3d at 645, because "[t]he requisites of published notice are intended to provide information to the public in general[,]" this Court has made clear that actual notice to the property owner does not cure defective published notice. *See In re Adams Cnty. Tax Claim Bureau*, 200 A.3d 622, 626 (Pa. Cmwlth. 2018); *Basehore v. Dauphin Cnty. Tax Claim Bureau*, 480 A.2d 1313, 1314 (Pa. Cmwlth. 1984); *Hicks v. Och*, 331 A.2d 219 (Pa. Cmwlth. 1975). Certainly, if actual notice cannot cure *defective* notice, the absence of proof that notice was published *at all* commands the same result.

This Court has reached a similar conclusion when a tax claim bureau failed to prove that it *posted* a property:

> This mandatory requirement is not automatically excused where the owner has actual knowledge of the pending sale because one of the purposes of posting is to notify the public at large of the sale and persons, such as lien holders, who have an interest in the property that may be affected by the sale.

*Piper*, 910 A.2d at 165 (property was not properly posted where the sheriff's deputy handed the posting to the property owner); *see also Schooley*, 4 A.3d at 801 ("Actual notice to the property owner does not cure defective posting.").

[15] Nor do we reach the defective posting herein. Specifically, the record evidence reveals that the Bureau's Posted Notice listed the Tax Sale date as September 21, 2020, when in fact the 1262 Property was sold on October 19, 2020.

[16] "It is well settled that this Court may affirm on other grounds where the grounds for affirmance exist." *Thorpe v. Commonwealth*, 214 A.3d 335, 339 n.8 (Pa. Cmwlth. 2019).

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Sale of Tax Delinquent Property :
on October 19, 2020 :
: No. 49 C.D. 2021
Appeal of: Richard Hovanec :

## O R D E R

AND NOW, this 4th day of January, 2024, the Fayette County Common Pleas Court's order entered on January 4, 2021 is affirmed.

_____
ANNE E. COVEY, Judge