# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yury Gutgarts and Milena Gutgarts,     :
                     Appellants     :
                            :
           v.                 :
                            :    No. 1233 C.D. 2017
Wayne County Tax Claim Bureau     :    Argued: September 18, 2018

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ROBERT SIMPSON, Judge (P.)
               HONORABLE ANNE E. COVEY, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                           FILED: October 17, 2018

       Yury Gutgarts and Milena Gutgarts (collectively, Gutgarts) appeal from the Wayne County Common Pleas Court's (trial court) July 31, 2017 order granting the Wayne County Tax Claim Bureau's (Bureau) motion to dismiss the Gutgarts' *Nunc Pro Tunc* Petition to Vacate Upset Sale and Objections to the Sale of Property (Petition). The Gutgarts present three issues for this Court's review: (1) whether the trial court improperly assigned the burden of proof to the Gutgarts; (2) whether the Bureau complied with the Real Estate Tax Sale Law's (RETSL)[1] notice provisions; and (3) whether the trial court erred by precluding the Gutgarts from introducing internet address search evidence and from cross-examining the Bureau's employee. After review, we reverse.

       On November 15, 2016,[2] the Gutgarts filed the Petition in the trial court, therein alleging that the Bureau had conducted an upset sale of the Gutgarts'

---

[1] Act of July 7, 1947, P.L. 1368, *as amended,* 72 P.S. §§ 5860.101 - 5860.803.

[2] The relevant filing dates are not clear from the record. The trial court docket reflects that the Petition was filed with the trial court on November 15, 2016 and time-stamped with that date. Notwithstanding, the Petition is dated November 2, 2016 and the verification attached thereto is

property, identified as Map #12-0-0048-0050 and located in the residential subdivision called "the Hideout" (Property), on September 13, 2016 for unpaid 2014 school taxes, and unpaid 2015 county, township and school taxes. The Gutgarts also averred that, based on the Bureau's file, notices of taxes due were sent to them in April 2015 and April 2016, but were returned to the Bureau marked as "unclaimed [u]nable to forward return to sender." Reproduced Record (R.R.) at 2. Further, the Gutgarts asserted that in July 2016, the Bureau's file reflected that the Bureau notified Yury Gutgarts by certified mail that the Property would be subject to a future sale if taxes were not paid. The notice was returned to the Bureau on September 1, 2016, marked "unclaimed unable to forward return to sender[;"] however, "a copy of that letter was delivered to [the Gutgarts.]"[3] R.R. at 2, ¶ 9. The Gutgarts also averred that, on September 30, 2016, the Bureau sent them notice by certified mail that the Property had been sold and that, on October 14, 2016, Yury Gutgarts contacted the Bureau by telephone and requested information to pay the taxes, but was informed that the Property had been sold. Based on these factual averments, the Gutgarts alleged, *inter alia*, that the Bureau had denied them due process by failing to provide effective service and notice. Accordingly, the Gutgarts requested the trial court to issue a rule to show cause why the sale should not be vacated. The trial court issued a rule which was docketed on November 15, 2016, and directed "the [Bureau] to

---

dated November 3, 2016. More importantly, in response to the Petition, the trial court issued a rule dated November 3, 2016 to show cause why the sale of the Property should not be vacated. However, the rule is time-stamped November 15, 2016.

[3] In support of their averment, the Gutgarts attached as Exhibit "A" to their Petition, a copy of the Bureau's undated "Notice of Return and Claim," allegedly returned to the Bureau on September 1, 2016 as unclaimed and which designates the Property's owners' address as:

Gutgarts Yury & Milena
16425 Collins Ave[.] Apt[.] 2814
Sunny Isles Beach, FL 33160

R.R. at 5. Notably, the Gutgarts did not identify in their Petition the specific address to which the notices were allegedly sent, or the address to which the notices should have been sent.

2

show cause why the sale of September 13th, 2016 . . . should not be vacated [(Rule)]." R.R. at 1.

The Bureau filed an answer to the Petition, therein admitting many of the Gutgarts' factual allegations, but averring that the April 2016 Bureau notification was actually sent in March 2016 and referenced unpaid 2014 school taxes and 2015 county, township and school taxes. The Bureau added that the September 30, 2016 certified letter was returned unclaimed; however, a courtesy letter mailed on the same date to the same address was not returned and, on October 24, 2016, the Gutgarts contacted the Bureau. The Bureau clarified:

> As the notices from the postal service did not indicate that the address was incorrect but rather indicated 'unclaimed – unable to forward – return to sender[,'] there was no indication that a further address needed to be sought. . . . The search made included contacting the [property owners association (Association)] which had a slightly different address as did Accurint.[4] Both addresses were used.

Bureau Answer at 2, ¶ 12, R.R. at 21.

Nationwide Capital Group, LLC, which purchased the Property at the sale (Purchaser), filed an answer with new matter (Purchaser's Answer), averring that 16425 Collins Avenue, Apartment 2814, Sunny Isles Beach, Florida was a "good address for [the Gutgarts]," and that the notices were returned by the U.S. Postal Service because the Gutgarts did not claim them. Purchaser's Answer at 2, ¶¶ 7-10, R.R. at 9. Purchaser further alleged that when Yury Gutgarts contacted the Bureau in October 2016, after the sale, he confirmed to the Bureau that the address on file was a "good address." Purchaser's Answer at 2, ¶ 11, R.R. at 9. In addition, purchaser averred that "other notices were sent by certified mail for delinquent 2014 taxes to [the Gutgarts] notifying them of delinquent 2014 taxes and scheduling [the] upset sale

---

[4] Accurint is a database used to locate individuals.

3

. . . for September 13, 2016[.]" Purchaser's Answer at 2, ¶ 9, R.R. at 9 (emphasis omitted). Purchaser denied the Gutgarts' claim that the Bureau made minimal effort to verify their mailing address and listed the steps the Bureau took to do so, including: verifying the Gutgarts last known address with the Tax Collector; verifying their address with the Association; verifying their address with the Tax Assessment Office; performing an internet search through Accurint; and, contacting the trial court's Prothonotary's Office, the Office of the Register and Recorder of Deeds, and the Wayne County Elections Bureau. In its new matter, Purchaser alleged that the Gutgarts filed untimely objections to the tax sale.

On July 31, 2017, the trial court held a hearing on the Petition. At the start of the hearing, Purchaser's counsel[5] orally requested the Court to dismiss the action on the basis that the Petition was untimely.[6] The trial court withheld decision on Purchaser's motion to dismiss and proceeded with the hearing, during which Purchaser's counsel argued that the burden of proof was on the Gutgarts. The Bureau's counsel agreed, contending that since "there was a confirmation of the sale and the deed did issue, . . . the burden shifts to [the Gutgarts.]"[7] R.R. at 58. The

---

[5] Attorney Warren Schlosser (Attorney Schlosser) prepared and signed the Bureau's Answer to the Petition. Attorney Jeffrey Treat (Attorney Treat) prepared and signed Purchaser's Answer to the Petition. Both Attorney Schlosser and Attorney Treat participated at the hearing. Notwithstanding, the hearing transcript identifies Attorney Treat as counsel "[f]or the Defendant[,]" which, according to the trial court caption, is the Bureau. R.R. at 55. Further, the trial court's opinion supporting dismissal references the motion to dismiss as "**Defendant's** motion for dismissal[.]" R.R. at 78 (emphasis added). This Court also notes that Appellee's Brief to this Court was signed by both Attorney Schlosser and Attorney Treat.

[6] In support of the motion to dismiss, Purchaser's counsel stated to the trial court that Purchaser informed Yury Gutgarts by telephone on October 24, 2016 that the Property was sold. According to Purchaser's counsel, the deed to the Property was filed on November 10, 2016 and the Gutgarts did not file the Petition until November 15, 2016. Purchaser did not offer the deed as evidence.

[7] The Bureau cites no case in its brief to this Court to support its position before the trial court that because the sale was confirmed and the deed issued, the burden of proof shifted to the Gutgarts. In fact, the Bureau does not address the burden argument at all in its brief.

4

Gutgarts' counsel expressed his disagreement, stating: "My understanding is the threshold issue is the [Bureau] has to present evidence to this court as to what efforts [it] took to provide adequate notice. Then it's my challenge to, or it's my burden to challenge that notice." *Id.* The trial court responded: "But this wasn't filed as exceptions to the sale. This was filed as exceptions to the confirmation. The deed was put on record and your client went ahead and filed objections. You present your evidence first . . . ."[8] *Id.*

The only evidence the Gutgarts offered at the hearing was the testimony of Bureau employee Lisa Borthwick (Borthwick). The Gutgarts' counsel questioned Borthwick regarding what efforts the Bureau made to notify the Gutgarts of the unpaid taxes and the Property's sale. The Bureau presented no evidence. At the close of the hearing, Purchaser's counsel renewed its motion to dismiss the Gutgarts' Petition. The trial court granted the motion, explaining: "There's been no reason suggested for failure to file exceptions within the time." R.R. at 64. On that same date, the trial court entered an order dismissing the Gutgarts' Petition, which stated in relevant part: "After hearing and upon consideration of Attorney Treat's renewed motion for dismissal, it is the order of this [c]ourt that said motion is GRANTED and the *Nunc Pro Tunc* petition is dismissed." R.R. at 69. On October 30, 2017, the trial court issued an opinion in support of its order. Therein, the trial court explained that the Bureau complied with all statutory notice requirements both before and after sale of the Gutgarts' Property. The Gutgarts appealed to this Court.[9]

---

[8] Contrary to the trial court's characterization of the Petition, the Gutgarts' Petition was titled, "*Nunc Pro[ ]Tunc* Petition to Vacate the Sale and **Objections to the Sale of Property** of [the Gutgarts]." R.R. at 2 (emphasis added).

[9] "Our review is limited to a determination of whether the trial court rendered a decision without supporting evidence, erred as a matter of law or abused its discretion." *Maya v. Cty. of Erie Tax Claim Bureau*, 59 A.3d 50, 54 n.2 (Pa. Cmwlth. 2013).

5

This Court first addresses the Gutgarts' contention that the trial court improperly assigned the burden of proof to the Gutgarts.[10] The law is well-established that "**the tax claim bureau bears the burden of proving strict compliance with the notice provisions.**" *In re Upset Tax Sale of September 29*, 163 A.3d 1072, 1074 (Pa. Cmwlth. 2017) (emphasis added); *see also Matter of Krzysiak*, 151 A.3d 292 (Pa. Cmwlth. 2016); *Maya v. Cty. of Erie Tax Claim Bureau,* 59 A.3d 50 (Pa. Cmwlth. 2013); *Pitts v. Del. Cty. Tax Claim Bureau*, 967 A.2d 1047 (Pa. Cmwlth. 2009). Moreover, the trial court herein issued the Rule directing the "Bureau to show cause why the sale of September 13th, 2016 . . . should not be vacated." R.R. at 1.

Although the trial court appeared to accept the Bureau's burden argument at the hearing, concluding that "[t]here's been no reason suggested for failure to file exceptions within the time[,]" the trial court's subsequently-issued opinion explicitly acknowledged that the Bureau had the burden of proof. R.R. at 64; *see* R.R. at 79-80. The trial court further found that the Bureau met its burden, explaining:

> The record reflects that the Bureau sent the notices regarding delinquent taxes, scheduling the upset sale, and the after sale procedure to 16425 Collins Ave., Apt. 2814, Sunny Isles Beach, FL 33160. This was the last post office address known to the Bureau, which the Bureau diligently confirmed as such by verifying with: (1) the Township Tax Collector . . . ; (2) the . . . [Association]; (3) the Wayne Tax Assessment Office; and (4) by performing an internet search through Accurint.
>
> In their [P]etition, [the Gutgarts] do not assert a single possible address which the Bureau could have verified. In

---

[10] In support of their argument, the Gutgarts cite to the Reproduced Record, "R.R. Page 4". Gutgarts Br. at 8. Page 4 of the Reproduced Record was not included and pages 2 through 6 encompasses the Petition. This Court assumes the Gutgarts intended to cite to page 4 of the hearing transcript wherein the parties and trial court discussed the burden of proof.

6

fact, [the Gutgarts] merely allege that 'a simple Google name search revealed multiple addresses for the [P]roperty owners, and of those, no other alternatives were used.' Further contradicting their assertions, on October 24, 2016, approximately six (6) weeks after the tax sale, [Yury Gutgarts] made telephone contact with the Bureau, at which time [he] confirmed with the Bureau that the address on file, where all notices were sent, was a good address. This admission necessitated that the Bureau had met its burden to determine the last post office address known to the Bureau. Therefore, this Court found that the Bureau successfully met all the notice requirements prior to the sale under Section [602 of the RETSL].

R.R. at 81. As will be discussed, *infra*, even if the trial court ultimately correctly assigned the burden to the Bureau, this Court **disagrees with the trial court that the record reflects that the Bureau sent the proper notices**, **or that the Bureau met its burden of demonstrating compliance with the RETSL's notice provisions.**

This Court has explained that "[t]he [RETSL] requires a tax claim bureau to give notice to the delinquent taxpayer before his property can be sold in satisfaction of overdue taxes." *Clemmer v. Fayette Cty. Tax Claim Bureau*, 176 A.3d 417, 420 (Pa. Cmwlth. 2017).

To satisfy due process, a tax claim bureau must provide 'notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [*Jones v. Flowers*, 547 U.S. 220,] 226 [(2006)] (internal quotation omitted). The notice provisions of the [RETSL] 'assure that no one is deprived of property without due process of law.' *In re Tax Claim Bureau*, . . . 419 A.2d 206, 209 ([Pa. Cmwlth.] 1980). Accordingly, **a tax claim bureau must strictly comply with each and every statutory notice provision, or the tax sale will be set aside**.

*Clemmer,* 176 A.3d at 420 (emphasis added).

7

Section 602(a) of the RETSL requires the Bureau to publish notification of an upset sale in two newspapers of general circulation. *See* 72 P.S. § 5860.602(a). Section 602(e) of the RETSL also provides:

> In addition to such publications, similar notice of the sale shall also be given by the bureau as follows:
>
> (1) At least thirty (30) days before the date of the sale, by United States certified mail, restricted delivery, return receipt requested, postage prepaid, to each owner as defined by this [RETSL].
>
> (2) If return receipt is not received from each owner pursuant to the provisions of clause (1), then, at least ten (10) days before the date of the sale, similar notice of the sale shall be given to each owner who failed to acknowledge the first notice by United States first[-]class mail, proof of mailing, at his last known post office address by virtue of the knowledge and information possessed by the bureau, by the tax collector for the taxing district making the return and by the county office responsible for assessments and revisions of taxes. It shall be the duty of the bureau to determine the last post office address known to said collector and county assessment office.
>
> (3) Each property scheduled for sale shall be posted at least ten (10) days prior to the sale.

72 P.S. § 5860.602(e).[11] "In sum, the tax claim bureau must notify the owner of the property by certified mail and then by first[-]class mail." *In re Upset Tax Sale*, 163 A.3d at 1075.

---

[11] This Court has explained:

> Section 602 of the [RETSL] sets forth three methods of notice requiring (1) publication at least thirty days prior to sale, (2) notification by certified/first-class mail, and (3) posting of the property at least ten days before the sale. **Notice provisions are to be strictly construed and strict compliance with such provisions is necessary** to guard against deprivation of property without due process, and if any one method of notice is defective, the sale is void.

*Hunter v. Washington Cty. Tax Bureau*, 729 A.2d 142, 143 (Pa. Cmwlth. 1999) (emphasis added).

8

Section 607.1(a) of the RETSL[12] states:

> When any notification of a pending tax sale or a tax sale subject to court confirmation is required to be mailed to any owner, mortgagee, lienholder or other person or entity whose property interests are likely to be significantly affected by such tax sale, and such mailed notification is either returned without the required receipted personal signature of the addressee or under other circumstances raising a significant doubt as to the actual receipt of such notification by the named addressee or is not returned or acknowledged at all, then, before the tax sale can be conducted or confirmed, the bureau must exercise reasonable efforts to discover the whereabouts of such person or entity and notify him. The bureau's efforts shall include, but not necessarily be restricted to, a search of current telephone directories for the county and of the dockets and indices of the county tax assessment offices, recorder of deeds office and prothonotary's office, as well as contacts made to any apparent alternate address or telephone number which may have been written on or in the file pertinent to such property. When such reasonable efforts have been exhausted, regardless of whether or not the notification efforts have been successful, a notation shall be placed in the property file describing the efforts made and the results thereof, and the property may be rescheduled for sale or the sale may be confirmed as provided in [the RETSL].

72 P.S. § 5860.607a(a) (emphasis added). Thus, a tax claim bureau must exercise reasonable efforts to locate the owner once the mailed notice is returned unclaimed. *See Maya*.

> [T]his Court succinctly summarized the law on conducting a reasonable investigation for an owner's current address as:
>
> > A taxing bureau's duty to investigate such matters is confined to determining the owners of record and then to use ordinary ***common sense business practices*** to ascertain proper addresses where notice of the tax sale may be

---

[12] Added by Section 30 of the Act of July 3, 1986, P.L. 351.

9

> given. Where notice is obviously not effectively reaching the owners of record, the taxing bureau must go ***beyond the mere ceremonial act of notice*** by certified mail. However, due process does not require the taxing bureau to perform the equivalent of a title search or to make decisions to quiet title.
>
> [*In re Tax Sale of Real Property Situated in Jefferson Twp.*,] 828 A.2d [475,] 479 [(Pa. Cmwlth. 2003)] (citations and footnotes omitted and emphasis added); *see also, Jones,* 547 U.S. at [234] . . . (reasoning that '[w]hat steps are reasonable in response to new information depends upon what the new information reveals.').

*Rice v. Compro Distrib., Inc.*, 901 A.2d 570, 574-75 (Pa. Cmwlth. 2006).

> [W]here notice is at issue, the proper focus 'is not on the alleged neglect of the owner, which is often present in some degree, but on whether the activities of the [tax claim b]ureau comply with the requirements of the statute.' *Smith* [*v. Tax Claim Bureau of Pike Cty.*], 834 A.2d [1247,] 1251 [(Pa. Cmwlth. 2003)] (citing *Chester* [*Cty.*] *Tax Claim Bureau v. Griffith*, . . . 536 A.2d 503 ([Pa. Cmwlth.] 1988)). We also have made clear that '[w]hether the statutory task is pointless does not excuse its attempted performance.' *Smith*, 834 A.2d at 1252.

*Steinbacher v. Northumberland Cty. Tax Claim Bureau*, 996 A.2d 1095, 1099 (Pa. Cmwlth. 2010). Moreover,

> [t]he General Assembly makes no provision for instances where . . . the [tax claim bureau] had already employed the correct address. Given the legislature's clear statement and the mandatory nature of the statutory language, this Court is constrained to conclude that Section 607.1 [of the RETSL] applies regardless of the correctness of the address to which the [tax claim bureau] sent the notices.

*Grove v. Franklin Cty. Tax Claim Bureau*, 705 A.2d 162, 164 (Pa. Cmwlth. 1997); *see also Maya*.

In the instant case, the Gutgarts specifically contend that the Bureau's notice was statutorily deficient for several reasons. They claim that since Yury Gutgarts and Milena Gutgarts are listed as the Property's owners, the Bureau's required notice under the RETSL must be separately sent by certified mail to each owner.[13] They further assert that "[a]ll notices to support the sale from the [Bureau] were not sent by certified mail." Gutgarts Br. at 8. The Gutgarts also contend that the Bureau failed to use "reasonable efforts," as required by Section 607.1(a) of the RETSL, because it did not independently conduct an internet search to identify other addresses for them.

At the trial court hearing, the Gutgarts' counsel called Borthwick as of cross-examination because she was the Bureau's employee. She was the only witness to testify for any party at the hearing, and she was familiar with the Bureau's efforts to notify the Gutgarts. The Gutgarts' attorney questioned Borthwick regarding the location where the Bureau sent notices, and the steps the Bureau took to confirm the Gutgarts' address. The above summary is the entirety of Borthwick's testimony and the **only evidence** presented at the hearing. The Bureau did not question her. Further, no party offered any documents into evidence.

This Court is constrained by the lack of record evidence of the Bureau's compliance with Sections 602(e) and 607.1 of the RETSL. **The Bureau presented no witnesses or exhibits** at the trial court hearing. While Borthwick's testimony

---

[13] Section 602(e)(1) of the RETSL mandates that the required notice of sale be sent to "**each owner** . . . ." 72 P.S. § 5860.602(e)(1) (emphasis added). Further, Section 602(e)(2) sets forth steps to be taken by a tax bureau when "return receipt is not received from **each owner** . . . ." 72 P.S. § 5860.602(e)(2) (emphasis added). This Court has stated: "With respect to notification by mail, we observe that when real property is owned by more than one person, Section 602 of the [RETSL] 'requires separate individual notice to each named owner of property. . . .'" *In re Upset Tax Sale Held 11/10/97*, 784 A.2d 834, 836 (Pa. Cmwlth. 2001) (quoting *Teslovich v. Johnson*, 406 A.2d 1374, 1378 (Pa. 1979)). Such separate notice is required when a property is held by spouses as tenants by the entireties. *See Gill v. Tax Claim Bureau of Monroe Cty.*, 616 A.2d 198 (Pa. Cmwlth. 1992).

supports the conclusion that the Bureau acted in accordance with Section 607.1 of the RETSL to discover the Gutgarts' whereabouts after the returned certified mailings were returned, the Bureau's insistence at the hearing that the Gutgarts bore the burden of proof and the Bureau's corresponding failure to offer any evidence of the specific notice it provided to the Gutgarts, left the trial court without substantial evidence necessary to conclude that the Bureau met its burden. Thus, this Court disagrees with the trial court that "[t]he record reflects that the Bureau sent the notices regarding delinquent taxes, scheduling the upset sale, and the after sale procedure to 16425 Collins Ave., Apt. 2814, Sunny Isles Beach, FL 33160." R.R. at 81.

Rather, there is no record evidence of **what notice the Bureau specifically gave to the Gutgarts** in accordance with Section 602(e) of the RETSL, and the notices, proof of mailings, and other documentary evidence attached to the Petition and the Answer thereto cannot be considered a part of the trial court's original record.[14] This Court cannot discern from Borthwick's testimony which notices were sent, and to which address or addresses; nor can this Court determine whether separate notices were sent to Yury Gutgarts and Milena Gutgarts, and whether all or some of the notices were sent by certified and/or regular mail.

The Concurrence and Dissent maintains that the trial court should not be faulted "for focusing on the *nunc pro tunc* relief specifically requested by [the Gutgarts]." Concurring and Dissenting Op. (CO/DO) at 4. It further states that "given the statutory requirement of 'proof of prejudice' for *nunc pro tunc* relief, Section 607(b.1) of RETSL, [there was] no error in the trial court's assignment of the

---

[14] Although the Gutgarts attached to the Petition a Notice of Return and Claim for 2014 and 2015 taxes, and Purchaser attached as exhibits to its Answer the Bureau's Tax Claim Notes, an email from the tax collector confirming the Gutgarts' address, the Bureau's Additional Notification Report, the Notice of Tax Sale and the Bureau's certificate of mailing, none of these documents were offered and admitted into evidence at the hearing. Further, Borthwick referred only generally to the notices sent, and copies of all notices and return mailing receipts were not offered or admitted into evidence.

12

burden of proof to [the Gutgarts] at the mini-hearing." [15] *Id.* In making these assertions, the Concurrence and Dissent omits critical undisputed facts. The Petition, although titled, "*nunc pro*[ ]*tunc,*" does not specifically contain a request for *nunc pro tunc* relief, but, rather expressly "pray[s] that a rule be issued to show cause why sale of the [Property] should not be vacated." R.R. at 3. In response, the trial court issued a Rule on the Bureau "to show cause why the sale of September 13th, 2016, of the [P]roperty . . . should not be vacated[,]" and required the Bureau to file an answer by a date certain. R.R. at 1. The trial court's Rule clearly stated the issue to be decided and placed the burden on the Bureau to demonstrate why the tax sale should not be set aside. In the Rule, the trial court also set discovery deadlines and directed that "upon completion of discovery[, a] hearing shall be set upon praecipe of either party." R.R. at 1.

Thereafter, Purchaser sought documents from the Gutgarts pertaining to their proper mailing address, and those documents were produced before the July 31, 2017 hearing. The hearing occurred approximately 8 months after the trial court issued the Rule, and after discovery was completed. Given these undisputed facts, it is clear that the trial court hearing was intended to decide the merits – whether the Bureau provided proper notice. This statement is further evidenced by the trial court's acknowledgement in its opinion that "[w]hen a property owner challenges an upset tax sale, it becomes the burden of the [t]ax [c]laim [b]ureau to prove strict

---

[15] The Gutgarts filed their Petition late, claiming defective notice. The fact that the Gutgarts labeled the filing "*nunc pro*[ ]*tunc*" does not mandate that Section 607(b.1) of the RETSL applies. The Concurrence and Dissent speculates that "[a]lthough it is unclear in the sparse record in this case, *nunc pro tunc* relief **may have been requested** because this filing was outside the 30-day statutory period for filing exceptions to the confirmation nisi of the consolidated return from the tax sale." CO/DO at 1-2 (emphasis added).

13

conformance with the notice provisions of the [RETSL]." R.R. at 79 (quotation marks omitted).[16]

Relying on *In re Continental Motels, Inc.*, 379 A.2d 897 (Pa. Cmwlth. 1977), the Concurrence and Dissent contends that the "RETSL contemplates a two-step procedure where a party belatedly seeks to challenge the validity of a tax sale after a trial court confirms a consolidated return absolutely and a deed is delivered." CO/DO at 2. According to the Concurrence and Dissent the first step, pursuant to Section 607(b.1) of the RETSL, is to demonstrate good cause. The second step is to review the notice process. Notably, *Continental Motels* did not mandate such a two-step procedure be used, but instead merely described the proceedings that had occurred in that particular case. Additionally, unlike the current action, in *Continental Motels*, "the petition [for leave to file objections and exceptions *nunc pro tunc*] and rule were not used to challenge the validity of the sale; rather, they were used simply to obtain leave to file the objections and exceptions by which such challenge was made." *Id*. at 899. Further, *Continental Motels* involved a different section of the RETSL – Section 308(a), 72 P.S. § 5860.308(a) pertaining to redemption notices.[17] Thus, *Continental Motels* is distinguishable.

---

[16] The Concurrence and Dissent also implies that because the hearing was only 11 minutes it could not have been intended to be a hearing on the merits. The length of a hearing is determined in significant part by the parties' choices. Here, the hearing was only 11 minutes because the Bureau chose not to present any evidence.

[17] This Court did reference Section 607(g) of the RETSL, explaining that:

> While Section 607(g) of the [RETSL] . . . establishes generally the invulnerability of sales confirmed absolutely, that subsection expressly excepts allegations 'as to the giving of notice as required by the act . . .' and permits them to be heard after confirmation. The allegations here clearly fall within that exception.

*Continental Motels*, 379 A.2d 897, 899 (Pa. Cmwlth. 1977).

This Court's unreported opinion in *Akhter v. Tax Claim Bureau*, (Pa. Cmwlth. No. 435 C.D. 2009, filed January 5, 2010),[18] involved similar facts to the instant matter. In *Akhter*, a property owner filed exceptions and objections to a tax sale in an effort to set the sale aside based upon the tax bureau's alleged failure to provide the required notice. As in the case at bar, mail notices of the tax sale were returned as undeliverable. The owner alleged that the tax bureau failed to conduct a reasonable search under Section 607(a.1) of the RETSL. The trial court held a hearing and thereafter concluded that the tax bureau failed to make reasonable notification efforts and set aside the sale.

This Court affirmed the trial court. With respect to the property owner's burden to demonstrate "cause" under Section 607(b.1) of the RETSL, the Court concluded:

> Section 607(g) of the [RETSL] authorizes [the o]wner to raise lack of notice as a basis to challenge the validity of a tax sale even after confirmation. *Cont'l Motels. See also Tax Claim Bureau of Northampton C[ty.]*, 720 A.2d 818 (under Section 607(g)[ of the RETSL], common pleas court may set aside tax sale, even after confirmation, for lack of notice). **Because the [tax b]ureau acknowledges its certified mail notices to [the o]wner, including the two 'pre-sale' notices required by Section 602(e), and the 'sold' notice required by Section 607(a.1)[ of the RETSL], were returned as undeliverable, Section 607(b.1)[ of the RETSL]'s requirement that [the o]wner demonstrate cause to file exceptions *nunc pro tunc,* is inapplicable.** Consequently, we discern no error in the trial court's decision that Section 607(g) [of the RETSL] expressly authorizes [the o]wner's exceptions.

---

[18] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a). *Akhter* is cited herein for its persuasive value.

*Akhter*, slip op. at 8. (emphasis added). Similarly, in the instant matter, the Bureau acknowledged that its notices were returned unclaimed. Accordingly, despite that the Petition was named "*Nunc Pro*[ ]*Tunc* Petition to Vacate Sale . . .", "**Section 607(b.1)'s requirement that** [**the Gutgarts**] **demonstrate cause to file exceptions *nunc pro tunc*, is inapplicable.**" R.R. at 2, *Akhter*, slip op. at 8. (emphasis added). The Bureau had the burden to demonstrate proper notice and it failed to do so.

The Concurrence and Dissent also claims "the [M]ajority opinion does not contest the[] undisputed fact[]" that "[t]he focus of the hearing was Taxpayers' request for *nunc pro tunc* relief." CO/DO at 3. To the contrary, as stated above, the Majority pointed out that the Gutgarts' only prayer for relief was a Rule as to why the sale of the Property should not be vacated. The prayer contained no request for *nunc pro tunc* relief. Notably, in concluding its opinion, the trial court stated:

> As the purpose behind the RETSL is not to deprive an owner of property, this Court views the record in a light most favorable to the Plaintiffs. However, as the record contains no evidence sufficiently refuting that the Bureau did not comply with the notice requirements under the RETSL, **this Court found that the Plaintiffs were afforded due process both before and after the September 13, 2016 upset sale.** Therefore, **because the Bureau met all requirements under the RETSL, the Plaintiffs' *Nunc Pro Tunc* petition was dismissed.**

R.R. at 84 (bold emphasis added; citation omitted). The trial court's statement that the "**Bureau met all requirements under the RETSL,**"[19] clearly reveals the trial court hearing focus. *Id*. (emphasis added). In addition, the trial court made no mention at the hearing nor did it use the phrase *nunc pro tunc* and the only use of the term *nunc pro tunc* was by Purchaser's counsel in relation to the Petition's title. The

---

[19] Despite the trial court's statement, the record clearly reveals that the Bureau offered no evidence.

effect of the trial court's order is that the Property's sale has been sustained based on the above-quoted conclusion notwithstanding the Bureau presented no evidence.

Based on well-established law, and the trial court's Rule, the Bureau had the burden to prove that it strictly complied with the RETSL's notice requirements. Notwithstanding, the Bureau chose not to present any evidence at the hearing and, accordingly, failed to meet its burden.[20]

For all of the above reasons, the trial court's order is reversed and the upset sale is set aside.[21]

_____
ANNE E. COVEY, Judge

---

[20] Given the Court's disposition of this issue, the Court need not address the Gutgarts' argument that the Bureau did not make a reasonable effort to find them because it conducted an internet search using only Accurint. Notwithstanding, such contention is without merit. A tax bureau is required to make reasonable, but not extraordinary efforts to locate an owner of property affected by a tax sale. *See In re Sale No. 10, Deed No. 23198*, 801 A.2d 1280 (Pa. Cmwlth. 2002). Borthwick's testimony demonstrates that the Bureau contacted the assessor's office and the tax collector. The record also reveals that the Bureau consulted the current return book, contacted the Association, the Prothonotary's office, the Wayne County Elections Bureau, and the Register and Recorder of Deeds Office in an effort to confirm the Gutgarts' address. Although Section 607.1(a) of the RETSL does not explicitly require an internet search, the Bureau used Accurint to provide internet search results. The address provided by Accurint was the same address offered by the Association. Thus, the Association was in possession of two addresses, both in the same building, each of which had been referenced at least twice by different sources. Another address in Montdale, New Jersey, was identified by the Prothonotary's Office and the Recorder's Office, but dated back to 2001. None of the sources identified any other addresses for the Gutgarts. Thus, the new information revealed in the Bureau's search did not demonstrate a likelihood that there were more than those addresses identified. In the context of the Bureau's efforts, this Court concludes that requiring the Bureau to engage in multiple internet searches would be unreasonable. *See Jones.*

[21] Having concluded that it was not reasonable for the Bureau to conduct additional internet searches, this Court holds that the trial court did not err when it excluded testimony pertaining to a Google search. *See Browne v. Commonwealth*, 843 A.2d 429 (Pa. Cmwlth. 2004) (trial court did not err when it precluded testimony that was not relevant).

17

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yury Gutgarts and Milena Gutgarts, :
         Appellants :
            :
     v.       :
            : No. 1233 C.D. 2017
Wayne County Tax Claim Bureau :

## O R D E R

AND NOW, this 17th day of October, 2018, the Wayne County Common Pleas Court's July 31, 2017 order granting the Wayne County Tax Bureau's motion to dismiss Yury Gutgarts' and Milena Gutgarts' Petition to Vacate Upset Sale and Objections to the Sale of Property is reversed. The upset sale is hereby set aside.


         _____
         ANNE E. COVEY, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Yury Gutgarts and Milena Gutgarts, :
                              Appellants :
                                         :    No. 1233 C.D. 2017
          v.                             :    Argued: September 18, 2018
                                         :
Wayne County Tax Claim Bureau            :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE ROBERT SIMPSON, Judge (P)
           HONORABLE ANNE E. COVEY, Judge

## OPINION NOT REPORTED

**CONCURRING and
DISSENTING OPINION
BY JUDGE SIMPSON**                       **FILED: October 17, 2018**

Because the Court of Common Pleas of Wayne County (trial court) did not hold a hearing on the merits underlying this challenge to the validity of a tax upset sale, I respectfully dissent from that portion of the majority opinion and order which nevertheless analyzes the merits and reverses the trial court. Instead, I would remand to the trial court to conduct a hearing on the merits.

Property owned by Yury Gutgarts and Milena Gutgarts (Taxpayers) in Wayne County was exposed to an upset sale for unpaid real estate taxes on September 12 or 13, 2016. The property was sold at that hearing to Nationwide Capital Group, LLC (Purchaser). Sometime in November 2016, Taxpayers filed a "NUNC PROTUNC [sic] PETITION TO VACATE SALE AND OBJECTIONS TO THE SALE OF PROPERTY OF [TAXPAYERS]." Reproduced Record (R.R.) at 2 (*Nunc Pro Tunc* Petition). This filing was verified by counsel, not by Taxpayers. R.R. at 6. Although it is unclear in the sparse record in this case, *nunc pro tunc* relief

may have been requested because this filing was outside the 30-day statutory period for filing exceptions to the confirmation nisi of the consolidated return from the tax sale. See Section 607(b) of the Real Estate Tax Sale Law (RETSL),[1] 72 P.S. §5860.607(b).

RETSL contemplates a two-step procedure where a party belatedly seeks to challenge the validity of a tax sale after a trial court confirms a consolidated return absolutely and a deed is delivered. See In re Continental Motels, Inc., 379 A.2d 897 (Pa. Cmwlth. 1977). The first step is to seek "an order nunc pro tunc for cause and, upon proof of prejudice," from the statutory 30-day period for filing exceptions to the confirmation nisi of the consolidated return. Section 607(b.1) of RETSL, 72 P.S. §5860.607(b.1). Typically, this involves proof that notices were not timely received, that notices contained incorrect information, or that notices were sent to the wrong address. See Continental Motels. If *nunc pro tunc* relief is granted, the second step involves an analysis of the merits of the entire notice process, which requires development of a full record. Id.

Here, Taxpayers expressly sought *nunc pro tunc* relief. The trial court entered a rule to show cause, requiring answers to be filed. As the majority points out, the opposing parties filed answers, and discovery ensued. What the majority opinion fails to address is that the averments of the opposing parties, R.R. at 7-23, and the discovery material filed of record one week before the July 2017 hearing,

---

[1] Act of July 7, 1947, P.L. 1368, as amended.

RES - 2

R.R. at 31-54, established that the Florida addresses used by the Wayne County Tax Claim Bureau (Tax Claim Bureau) were the <u>correct</u> addresses for Taxpayers.[2]

A very brief hearing was held on July 17, 2017. The hearing lasted 11 minutes, and covered seven pages of transcript. R.R. at 57-64. The focus of the hearing was Taxpayers' request for *nunc pro tunc* relief. Importantly, the majority opinion does not contest these undisputed facts.

At the beginning of the July mini-hearing, counsel for Purchaser asked that Taxpayers' *Nunc Pro Tunc* Petition to vacate the sale and objections to the sale be dismissed as untimely. R.R. at 57. He also asserted that because the deed to the property was already filed, the burden at the hearing was on Taxpayers. R.R. at 58. The trial court elected to hear evidence, but, because of the lateness of the challenge, it placed the burden on Taxpayers to establish a basis for *nunc pro tunc* relief. <u>Id.</u>

Taxpayers did not attend, but they were represented by counsel. Unsurprisingly, there was no testimony that Taxpayers did not receive notice of the tax sale or that the Florida addresses used for the notices were inaccurate.[3] However, there was testimony from a representative of the Tax Claim Bureau that the certified

_____

[2] For example, Taxpayers provided current utility bills, credit card statements, and Milena Gutgarts' Florida Driver's License, all of which referenced the Florida addresses to which the Wayne County Tax Claim Bureau sent notices of the tax upset sale.

[3] Even now, in their appeal to this Court, Taxpayers do not assert that notices were sent to the wrong addresses or were not received. To the contrary, Taxpayers argue, "The focus on due process does not revolve around whether the notices are received or whether they are read." Am. Br. of Appellant at 11; <u>see also</u> Am. Br. of Appellant at 14 ("Due process does not require a person to read what is provided.").

notices (and only the certified notices) were returned marked "unclaimed." R.R. at 60. The thrust of argument by counsel for Taxpayers was that, in addition to its other efforts to locate Taxpayers, R.R. at 61-62, the Tax Claim Bureau should have conducted a <u>second</u>, different internet search for alternate addresses for Taxpayers. R.R. at 62-64.[4]

A few minutes later, counsel for Purchaser renewed his request for dismissal. R.R. at 64. The trial court agreed, saying, "Sustained. There's been no reason suggested for failure to file exceptions within the time. Thank you." <u>Id.</u> The hearing ended. Thereafter, the trial court entered an additional written order which provided in pertinent part: "After hearing and upon consideration of [counsel for Purchaser's] motion for dismissal, it is the order of this Court that said motion is **GRANTED** and the *Nunc Pro Tunc* [P]etition is dismissed." R.R. at 66. This is the order from which appeal was taken.

Unlike the majority, I cannot fault the trial court for focusing on the *nunc pro tunc* relief specifically requested by Taxpayers. In addition, given the statutory requirement of "proof of prejudice" for *nunc pro tunc* relief, Section 607(b.1) of RETSL, I see no error in the trial court's assignment of the burden of proof to Taxpayers at the mini-hearing. Further, upon denial of *nunc pro tunc* relief, there was no reason for either the Purchaser or the Tax Claim Bureau to go forward with more evidence going to the merits of the entire notice process.

---

[4] I agree with the majority that it was not reasonable for the Bureau to conduct additional internet searches.

Given that, for good reason, the short hearing was focused on the *nunc pro tunc* relief and not on the merits, there has not been a hearing covering the merits, and that material in the record supports the actions of the Tax Claim Bureau, I believe it unwise to reverse the trial court on the merits and award summary relief to Taxpayers. Instead, I would remand to the trial court to hold a hearing on the merits.

The majority cites as persuasive an unreported opinion in Akhter v. Tax Claim Bureau of Delaware County, (Pa. Cmwlth., No. 435 C.D. 2009, filed January 5, 2010), as involving similar facts. For several reasons, I respectfully disagree that Akhter involved similar facts, and is therefore useful in the present analysis. First, the taxpayer in Akhter, unlike Taxpayers here, did not request *nunc pro tunc* relief. Moreover, the taxpayer in Akhter clearly *averred* that he did not receive the sale notices. Second, and most importantly, in Akhter there was a full hearing on the merits. Under these circumstances, in Akhter the procedures were vastly different from those in this case. Third, at the hearing, it was *proved* that the taxpayer did not receive the sale notices and that the overworked tax claim bureau sent the notices to the wrong address. Slip Op. at 2. The notices in Akhter were sent to the vacant property, not to the taxpayer. Id. There is no proof of similar facts in this case.

The foregoing notwithstanding, the record does not clearly establish when the confirmation nisi was entered, when the consolidated return was absolutely confirmed, when the deed was delivered, and when in relation to those events Taxpayers filed their *Nunc Pro Tunc* Petition. This lack of clarity, together with the testimony that certified notices to Taxpayers' Florida addresses were returned

RES - 5

"unclaimed," persuades me that Taxpayers should be able to proceed to a hearing on the merits despite the timing of their challenge. R.R. at 60. The majority opinion and order does not address the issue directly, but to the extent the opinion and order tacitly reverses the trial court on the lateness issue, I agree with the majority.

ROBERT SIMPSON, Judge